# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **MATTHEW PATTON,**<br>Individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**G4S SECURE SOLUTIONS USA INC. and SECURITAS CRITICAL INFRASTRUCTURE SERVICES, INC.,**<br><br>*Defendants.* | Civil Action No. 6:22-cv-01276<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiff Matthew Patton ("Patton") brings this action individually and on behalf of all current and former hourly night shift security supervisors (collectively "Plaintiff and the Putative Collective Members") who worked for G4S Secure Solutions USA Inc. ("G4S") and/or Securitas Critical Infrastructure Services, Inc. ("Securitas") (collectively "Defendants")—in Glen Rose, Texas, at any time from December 14, 2019 through December 31, 2021 to recover unpaid overtime compensation, liquidated damages, attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), an amended 29 U.S.C. §§ 201–19.

## I.
## OVERVIEW

1.  This is a collective action to recover unpaid overtime wages, liquidated damages, and other applicable penalties brought pursuant to the FLSA, 29 U.S.C. §§ 201–19.

2.  Plaintiff and the Putative Collective Members are those similarly situated persons who worked for either Defendant at any time since December 14, 2019, through December 31, 2021, and

have not been paid overtime compensation for all hours worked in excess of forty (40) hours in a workweek in violation of federal law.

3. Although Plaintiff and the Putative Collective Members routinely worked in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4. Both Defendants provide security services for business clients globally.

5. Plaintiff and the Putative Collective Members worked for Defendants as non-exempt night security supervisors and were responsible for patrolling and maintaining the security of the nuclear power plant where they worked.

6. During the relevant time period, Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Collective Members overtime of at least one and one-half his regular rate for all hours worked in excess of forty (40) hours per workweek.

7. Specifically, Defendants' regular practice was to count hours worked in the wrong workweek. For instance, when Plaintiff and the Putative Collective Members worked sixty (60) hours in the first week of a new pay period and then twenty-four (24) hours in the second week of the same pay period, Defendants moved twelve (12) hours to the second pay period. Thus, Defendants incorrectly made it appear as though Plaintiff and the Putative Collective Members had worked forty-eight (48) hours in the first week and thirty-six (36) hours in the second week of the pay period.

8. The effect of Defendants' practices were that all overtime hours worked by Plaintiff and the Putative Collective Members were not properly counted and paid; thus, Defendants failed to properly compensate Plaintiff and the Putative Collective Members the proper amount of overtime under the FLSA.

9. Plaintiff and the Putative Collective Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.

10. The decision by Defendants to not to pay overtime compensation to Plaintiff and the Putative Collection Members for each hour worked in excess of forty (40) hours in a workweek was neither reasonable nor in good faith.

11. Plaintiff and the Putative Collective Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

12. Plaintiff also prays that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## II.
## PARTIES

13. Plaintiff Patton worked for Defendants as a Security Supervisor in Glen Rose, Texas during the relevant time period. Plaintiff Patton did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

14. The FLSA Collective Members are those current and former hourly night-shift supervisors who were employed by either Defendant at the Glen Rose, Texas nuclear power plant, at any time from December 14, 2019 through January 1, 2022, and have been subjected to the same illegal pay system under which Plaintiff Patton worked and was paid.

---

[1] The written consent of Matthew Patton is attached hereto as Exhibit "A."

15. Defendant G4S is a foreign for-profit corporation licensed to and doing business in the State of Texas. Defendant G4S may be served through its registered agent for service: Prentice Hall Corp System, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

16. Defendant Securitas is a foreign for-profit corporation licensed to and doing business in the State of Texas. Defendant Securitas may be served through its registered agent for service: National Registered Agents, Inc., 1999 Bryan St., Ste 900, Dallas, Texas 75201-3136.

## III.
## JURISDICTION & VENUE

17. This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

18. Plaintiff Patton has not entered into any arbitration agreement that would affect the Court's subject-matter jurisdiction.

19. This Court has general and specific personal jurisdiction over Defendants because they purposely availed themselves of the privilege of conducting activities within Texas; they have sufficient contacts with Texas in general and with respect to Plaintiff's claims; and exercising jurisdiction over them does not offend traditional notions of fair play and substantial justice.

20. Venue is proper pursuant to 29 U.S.C. § 1391(b) in the Western District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

21. Specifically, Plaintiff Patton and the Putative Collective Members worked for Defendants in Glen Rose, Texas, which is located in this District and Division.

## IV.
## ADDITIONAL FACTS

22. G4S is a global security services company, employing over 800,000 people worldwide to provide security services to its business clients.[2]

23. Securitas is also a global security services company, employing nearly 100,000 people worldwide to provide security services to its business clients.[3]

24. To provide their services, Defendants employed numerous hourly security supervisors—including Plaintiff and the individuals that make up the putative class.

25. Plaintiff and the Putative Collective Members were employed by Defendants as non-exempt, hourly employees.

26. Plaintiff and the Putative Collective Members' job duties primarily include supervising security guards and maintaining the security of the Power Plant.

27. While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work.

28. Importantly, none of the FLSA exemptions relieving a covered employer (such as Defendants) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Collective Members.

29. Plaintiff Patton has worked as a security supervisor at the Glen Rose nuclear power plant (the "Power Plant") since approximately March of 2013.

30. Plaintiff and the Putative Collective Members are similarly situated with respect to their job duties, their pay structure, and, as set forth below, the policies and practices of Defendants resulting in the complained of FLSA violations.

31. Plaintiff and the Putative Collective Members are similarly situated with respect to their job duties, in that they all supervise security guards and maintain the security of the Power Plant.

---

[2] https://www.g4s.com/who-we-are

[3] https://www.securitasinc.com/about-us/

32. Plaintiff and the Putative Collective Members are similarly situated with respect to their pay structure in that they are all paid on an hourly basis.

33. Plaintiff and the Putative Collective Members are similarly situated with respect to the policies and practices of Defendants resulting in the complained of FLSA violations.

34. From March of 2016 until December of 2020, Securitas held the contract for security at the Power Plant and was the employer for its security guards and security supervisors—including Plaintiff and the Putative Collective Members.

35. From December of 2020 until December of 2021, G4S held the contract for security at the Power Plant and was the employer for its security guards and security supervisors—including Plaintiff and the Putative Collective Members.

36. In April of 2021, Allied Universal completed a stock acquisition of G4S. Through the purchase, G4S became (and remains) a subsidiary of Allied Universal.

37. In December of 2021, Allied Universal took over the contract for the Power Plant from G4S.

38. Allied Universal became (and remains) Plaintiff Patton's employer since taking over the Power Plant's security contract in December 2021.

39. During the relevant time period, Plaintiff and the Putative Collective Members were assigned to work the nightshift from 7 p.m. to 7 a.m.

### Securitas Failed to Correctly Calculate Overtime Hours Worked

40. During the course of Plaintiff and the Putative Collective Members' employment with Securitas, Securitas's workweek ran from Friday at 12:00 a.m. until Thursday at 11:59 p.m.

41. Prior to 2017, Securitas's security supervisors, including Plaintiff Patton, worked eight (8) hour shifts at the Power Plant.

42. During the time in which the security supervisors at the Power Plant worked eight (8) hour shifts, Securitas set the security supervisors schedules to run in thirty-six (36), forty-eight (48) hour workweeks in each two week pay period. This meant that in one week of the pay period a security supervisor would work thirty-six (36) hours and in the next workweek of the same pay period the security supervisor would work forty-eight (48) hours.

43. In approximately January of 2017, Securitas's security supervisors at the Power Plant, including Plaintiff Patton, were switched to twelve (12) hour shifts.

44. The security supervisor day shift ran from 7:00 a.m. to 7:00 p.m. and the night shift from 7:00 p.m. to 7:00 a.m.

45. As a result of the switch to twelve (12) hour shifts, part of the night shift security supervisors' shift, including Plaintiff Patton's shift, would begin in one workweek but end in the next workweek.

46. Even though this change meant work hours would be divided between different days for night shift security supervisors, like Plaintiff Patton, Securitas did not adjust its pay practices or the beginning or ending of the workweek to account for this change.

47. Instead of including the hours worked by Plaintiff and the Putative Collective Members in the workweek in which they were worked, Securitas included hours worked in the day in which the shift was started.

48. For example, when Plaintiff Patton began work on Thursday at 7:00 p.m. and worked until Friday at 7:00 a.m. Securitas included the entire twelve (12) hours worked in the workweek that ended on Thursday at 11:59 p.m.

49. As a result, the seven (7) hours worked from Friday from 12:00 a.m. until 7:00 a.m. were not included in correct workweek, which led to an underpayment of overtime wages.

50. Although Plaintiff and the Putative Collective Members were being paid for a thirty-six, forty-eight (36/48) hour schedule, in reality Plaintiff and the Putative Collective Members were working a thirty-one, fifty-three (31/53) hour schedule.

51. As a result of this practice, Securitas failed to pay Plaintiff and the Putative Collective Members for five (5) hours of overtime work every two weeks during his employment with Securitas.

**G4S Continued to Pay Plaintiff and the Putative Collective Members Incorrectly**

52. In December of 2020, G4S took over the contract for security at the Power Plant.

53. As a result, Plaintiff and the Putative Collective Members' employment was switched from Securitas to G4S.

54. Upon its takeover, G4S changed the start and end of the workweek to begin on Monday at 7:00 a.m. (when the first day shift started) and to end on Monday at 6:59 a.m. (when the night shift ended).

55. Despite the changes to the workweek, G4S continued to pay a thirty-six, forty-eight (36/48) hour schedule rather than correctly calculate the hours worked in the week in which they were earned.

56. In fact, G4S's change to the schedule made the scheduling problem even worse, as Plaintiff and the Putative Collective Members were now working a twenty-four, sixty (24/60) hour schedule.

57. G4S counted the hours worked according to the day Plaintiff and the Putative Collective Members ended their shift. If Plaintiff and the Putative Collective Members were scheduled to work on a Tuesday and Wednesday, they began their shift Monday night until Tuesday morning and then Tuesday night until Wednesday morning.

58. For payment purposes, G4S would consider Plaintiff and the Putative Collective Members to have worked 12 hours on Tuesday and 12 hours on Wednesday.

59. Thus, G4S failed to calculate hours worked on the day they were actually worked and also failed to calculate hours in the correct week worked.

60. As a result of G4S's calculations, Plaintiff and the Putative Collective Members regularly worked twenty (20) hours of overtime every two weeks but were only paid for approximately eight (8) hours of overtime work.

61. Based on the schedules set by Defendants, Plaintiff and the Putative Collective Members worked over forty (40) hours every other workweek in which they performed services for Defendants.

62. Plaintiff Patton's coworker, Scotty Roberson, informed both Securitas and G4S that they were calculating every night shift security guard and security supervisor's pay incorrectly.

63. Despite being informed that they were incorrectly calculating Plaintiff and the Putative Collective Members' pay, Defendants failed to take any corrective action.

64. As a result of Defendants' failure to compensate Plaintiff and the Putative Collective Members for all hours worked in excess of forty (40) hours in a workweek, Plaintiff and the Putative Collective Members worked overtime hours for which they were not compensated at the rates required by the FLSA.

65. Defendants did not pay Plaintiff and the Putative Collective Members the correct amount of overtime compensation required by the FLSA for all hours worked in excess of forty (40) in a workweek.

66. Defendants knew they were not compensating Plaintiff and the Putative Collective Members for the proper amount of overtime compensation in violation of the FLSA because Plaintiff Patton's coworker informed them on multiple occasions that they were failing to calculate their payable overtime hours correctly.

67. Defendants knew or should have known that their failure to pay overtime to Plaintiff and the Putative Collective Members would cause and did cause financial injury to Plaintiff and the Putative Collective Members.

68. Because Defendants knowingly failed to compensate Plaintiff Patton time and a half for all hours worked in excess of forty (40) in a workweek, Defendants' pay policies and practices willfully violate the FLSA.

69. Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid straight time pursuant to Illinois state law.

## V.
## CAUSE OF ACTION

### FIRST CAUSE OF ACTION
**(Collective Action Alleging FLSA Violations)**

**A.    FLSA COVERAGE**

70. All previous paragraphs are incorporated as though fully set forth herein.

71. The "FLSA Collective" is defined as:

**ALL HOURLY NIGHT SHIFT SECURITY SUPERVISORS WHO WORKED FOR G4S SECURE SOLUTIONS USA, INC. AND/OR SECURITAS CRITICAL INFRASTRUCTURE SERVICES, INC., IN GLEN ROSE, TEXAS, AT ANY TIME FROM DECEMBER 14, 2019, THROUGH JANUARY 1, 2022 ("FLSA Collective" or "FLSA Collective Members").**

72. At all material times, Defendants were employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

73. At all material times, Defendants were enterprises within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

74. At all material times, Defendants have been enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprises have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

75. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce for purposes of the FLSA.

76. In performing work for Defendants, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

77. Specifically, Plaintiff and the FLSA Collective Members were non-exempt employees who worked for Defendants and were engaged in commercial services that were directly essential to the providing of goods and services by Defendants to their customers. 29 U.S.C. § 203(j).

78. At all material times, Plaintiff and the FLSA Collective Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 207.

79. In violating the FLSA, Defendants acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

80. The proposed class of similarly situated employees—that is, FLSA Collective Members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 71.

81. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendants.

## B.  FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA

82. All previous paragraphs are incorporated as though fully set forth herein.

83. Defendants violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

84. Plaintiff and the FLSA Collective Members has suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein; though Defendants are in possession and control of necessary documents and information from which Plaintiff and the FLSA Collective Members would be able to precisely calculate damages.

85. Moreover, Defendants knowingly, willfully and in reckless disregard carried out their illegal pattern of failing to pay Plaintiff and the FLSA Collective Members the proper amount of overtime compensation. 29 U.S.C. § 255(a).

86. Defendants knew or should have known their pay practices were in violation of the FLSA.

87. Defendants are sophisticated parties and employers, and therefore knew (or should have known) their policies were in violation of the FLSA.

88. Plaintiff and the FLSA Collective Members, on the other hand, were unsophisticated employees who trusted Defendants to pay them according to the law.

89. The decision and practice by Defendants to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was not reasonable nor in good faith.

90. Accordingly, Plaintiff and the FLSA Collective Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

C. **COLLECTIVE ACTION ALLEGATIONS**

91. All previous paragraphs are incorporated as though fully set forth herein.

92. Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of Defendants' employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

93. Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

94. The FLSA Collective Members are defined in Paragraph 71.

95. Defendants' failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Defendants', and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

96. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

97. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

98. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

99. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

100. Absent a collective action, many members of the proposed FLSA collective will not likely obtain redress of their injuries and Defendants will retain the proceeds of their violations.

101. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

102. Accordingly, notice of the action should be promptly sent to the FLSA collective of similarly situated plaintiffs as in Paragraph 71.

## V.
## RELIEF SOUGHT

103. Plaintiff Patton respectfully prays for judgment against Defendants as follows:

    a. For an Order certifying the FLSA Collective as defined in Paragraph 71;

    b. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

    c. For an Order pursuant to § 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff Patton (and those FLSA Collective Members who have joined in the suit);

    d. For an Order awarding the costs and expenses of this action;

    e. For an Order awarding attorneys' fees;

    f. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

    g. For an Order awarding Plaintiff Patton a service award as permitted by law;

    h. For an Order compelling the accounting of the books and records of Defendants, at Defendants' own expense (should discovery prove inadequate);

    i. For an Order granting such other and further relief as may be necessary and appropriate.

Date: December 14, 2022    Respectfully submitted,

          **ANDERSON ALEXANDER, PLLC**

        By: */s/ Clif Alexander*
          **Clif Alexander**
          Texas Bar No. 24064805
          clif@a2xlaw.com
          **Austin W. Anderson**
          Texas Bar No. 24045189
          austin@a2xlaw.com
          **Lauren E. Braddy**
          Texas Bar No. 24071993
          lauren@a2xlaw.com
          **Alan Clifton Gordon**
          Texas Bar No. 00793838
          cgordon@a2xlaw.com
          **Carter T. Hastings**
          Texas Bar No. 24101879
          carter@a2xlaw.com
          819 N. Upper Broadway
          Corpus Christi, Texas 78401
          Telephone: (361) 452-1279
          Facsimile: (361) 452-1284

          ***Attorneys for Plaintiff and the Putative Collective Members***